IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

ERIC OLSEN, KEVIN D. SWARTZ,      )
JASON C. MCBRIDE,                 )    Case No.  05-6365-HO
                                  )
              Plaintiffs,         )
                                  )    ORDER
              v.                  )
                                  )
ALBERTO GONZALES, in his          )
official capacity as Attorney     )
General of the United States of   )
America, and ILENE LASHINSKY,     )
in her official capacity as       )
United States Trustee,            )
                                  )
              Defendants.         )
_____ )

    Plaintiffs brings this suit challenging the constitutionality

of various provisions of the Bankruptcy Code enacted in the

Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA).

Specifically, plaintiffs challenge 11 U.S.C. §§ 526(a)(4),

526(a)(1), 527, and 528 as violative of the First Amendment.  In

addition, plaintiffs contend that 11 U.S.C. §§ 526-528 are too

vague in violation of the Fifth Amendment's Due Process Clause.

Sections 526, 527 and 528 require "debt relief agencies" who render "bankruptcy assistance" to enter written contracts with "assisted persons," disclose the extent of services provided and fees charged, and disclose clearly and conspicuously in all advertising that their services contemplate bankruptcy. Debt Relief agencies are required to provide a detailed written notice to all "assisted persons" of the disclosure requirements of the Code, the obligation of accuracy and truthfulness on those disclosures, and that failure to comply with those requirements carry potential civil and criminal sanctions. 11 U.S.C. § 527. They are also required to advise the "assisted person" that the person may proceed pro se, or may hire an attorney, or may hire a bankruptcy petition preparer, and that only attorneys and not petition preparers can render legal advice. Id. They are required to provide the "assisted person" with information on how to value assets, how to complete bankruptcy schedules, and how to determine what property is exempt. Id. Debt relief agencies are prohibited from failing to provide the services they contracted to provide, counseling any person to make false statements, or advising the person "to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer." 11 U.S.C. § 526(a)(4). Section 526(c) creates civil liability for violation of the duties enumerated.

Plaintiffs Eric Olsen and Kevin D. Swartz are attorneys who practice bankruptcy law.  Plaintiff Jason McBride is an attorney who does not represents clients in bankruptcy or file petitions for relief under the bankruptcy code.

Defendants move to dismiss the complaint contending that BAPCPA does not violate the First or Fifth Amendments.  However, an issue that must first be addressed is whether attorneys and specifically plaintiffs are debt relief agencies for purposes of the Act.  If plaintiffs do not fall within the definition of "debt relief agency," then they lack standing to bring this suit and the suit must be dismissed.  In addition, even if plaintiffs are debt relief agencies, there is still an issue of whether a live case or controversy exists.

The challenged provisions of the BAPCPA apply to "debt relief agencies."

> The term "debt relief agency" means any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110, but does not include--
>     (A) any person who is an officer, director, employee, or agent of a person who provides such assistance or of the bankruptcy petition preparer;
>
>     (B) a nonprofit organization that is exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986;
>
>     (C) a creditor of such assisted person, to the extent that the creditor is assisting such assisted person to restructure any debt owed by such assisted person to the creditor;

Order -3-

>           (D) a depository institution (as defined in
>           section 3 of the Federal Deposit Insurance
>           Act) or any Federal credit union or State
>           credit union (as those terms are defined in
>           section 101 of the Federal Credit Union Act),
>           or any affiliate or subsidiary of such
>           depository institution or credit union; or
>
>           (E) an author, publisher, distributor, or
>           seller of works subject to copyright
>           protection under title 17, when acting in such
>           capacity.

11 U.S.C. § 101(12A).  "The term 'assisted person' means any person

whose debts consist primarily of consumer debts and the value of

whose nonexempt property is less than $150,000."  11 U.S.C. §

101(3).


A.    Standing

    1.    Are Attorneys Debt Relief Agencies?

>     The term "bankruptcy assistance" means any goods or
>     services sold or otherwise provided to an assisted person
>     with the express or implied purpose of providing
>     information, advice, counsel, document preparation, or
>     filing, or attendance at a creditors' meeting or
>     appearing in a case or proceeding on behalf of another or
>     providing legal representation with respect to a case or
>     proceeding under this title.

11 U.S.C. § 101(4A).  This definition specifically includes "legal

representation."  One of the early decisions addressing this issue

(in an advisory opinion on the court's own motion) concludes that

attorneys are not "debt relief agencies within the meaning of the

BAPCPA.  See In re Attorneys At Law and Debt Relief Agencies, 332

B.R. 66 (Bankr. S.D. Ga 2005).[1]

Judge Lamar Davis acknowledged that the language defining debt relief agency is broad enough to include attorneys and law firms. Id. at 67-68. Judge Davis also noted, however, that the definition did not include the word "attorney" or "lawyer," but did include "bankruptcy petition preparer" which is elsewhere defined to exclude attorneys and their staffs. Id. at 69. Judge Davis also noted that the definition of attorney did not make reference to debt relief agency. Id.; 11 U.S.C. § 101(4). Judge Davis concluded that the inclusion of the term "legal representation" in the definition of "bankruptcy assistance" was Congress's effort to empower the Bankruptcy Courts presiding over a case with authority to protect consumers who are before the Court, who may have been harmed by a debt relief agency that may have engaged in the unauthorized practice of law, and whose existing remedies for any damage is more theoretical than real. In Re Attorneys, 322 B.R. at 69. Judge Davis also took issue with the fact that Section 527(b) requires debt relief agencies to inform assisted persons that they have the right to hire an attorney or to represent themselves, that only an attorney can render legal advice, and how to perform services pro se that would be universally provided if the person

---

[1]Another Georgia court has found that whether attorneys were subject to the BAPCPA obligations did not present a live case or controversy because there was no present threat of enforcement. See In the Matter of Francis I. McCartney and Beverly E. McCartney, 336 B.R. 588 (Bankr. M.D. Ga. 2006).

hired an attorney.    Judge Davis opined that the provision is a
consumer protection provision intended to regulate that universe of
entities who assist persons but are not attorneys. Id. at 69-70.
Judge Davis also noted that to construe debt relief agency as
including attorneys "would be a breathtakingly expansive
interpretation of federal law to usurp state regulation of the
practice of law via the ambiguous provisions of this Act, which in
no clear fashion lay claim to the right to do any such thing." Id.
at 71.

        Nonetheless, the legislative history does provide a very
strong indication that attorneys are included in the definition.
"The bill's consumer protections include provisions strengthening
professionalism standards for attorneys and others who assist
consumer debtors with their bankruptcy cases." H.R. Rep. No. 109-
31, 109th Cong. 1st Sess. at 4. reprinted in 2005 U.S.C.C.A.N. at
103.  On March 9, 2005, Senator Feingold proposed amendment No. 93
to Congress which would have excluded lawyers from the definition
of debt relief agencies.   See 151 CONG. REC. S2306-02, 2316-17
(2005).  The Senate did not address Senator Feingold's proposal
See id.[2]   However, it is the plain language of the Act that leads
to the conclusion that attorneys are to be included in the
definition of "debt relief agency."    Thus, further use of the

---

        [2]But the Supreme Court has stated that failed legislative proposals are a particularly
dangerous ground on which to rest an interpretation of a statute.  Lockhart v. United States, 126
S.Ct. 699, 702 (2005).

tools of statutory construction is not necessary.  "Bankruptcy assistance" is defined to include services provided for the purpose of counsel and legal representation.  The definition of "debt relief agency" specifically lists five exclusions and Congress could have put attorney in the list if it meant to exclude attorneys.

### 2.   Are Plaintiff's Debt Relief Agencies?

Assuming attorneys are included in the definition of debt relief agency, defendants contend that the plaintiffs have failed to properly allege they are regulated attorneys because they failed to allege they advise debtors with less than $150,000 in non-exempt assets **whose debts consist primarily of consumer debts** to file for bankruptcy.  Such pleading deficiency can be overcome with a simple amendment and the court declines to dismiss on this ground.  But this demonstrates another issue – whether a live case and controversy exists.

### 3.   Is the Threat of Enforcement Real and Immediate?

The Court must first determine whether it has jurisdiction to rule on the allegations in plaintiffs' complaint.  "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" U.S. v. Hays, 515 U.S. 737, 742

(1995).  Plaintiffs bear the burden of demonstrating that this suit

involves a "case or controversy."  In Arizonans For Official

English v. Arizona, the United States Supreme Court stated:

> Article III, § 2, of the Constitution confines federal
> courts to the decision of "Cases" or "Controversies."
> Standing to sue or defend is an aspect of the
> case-or-controversy requirement. To qualify as a party
> with standing to litigate, a person must show, first and
> foremost, "an invasion of a legally protected interest"
> that is "concrete and particularized" and " 'actual or
> imminent.' "

520 U.S. 43, 64 (1997).  To satisfy the Article III case or

controversy requirement, a complainant must have suffered some

actual injury that can be redressed by a favorable judicial

decision.  Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70

(1983).  Plaintiffs must allege some threatened or actual injury

resulting from the ostensibly illegal action.  Abstract injury is

not enough.  It must be alleged that plaintiffs have sustained or

are immediately in danger of sustaining direct injury as the result

of the challenged statute.  The injury or threat of injury must be

both real and immediate, not conjectural or hypothetical.  O'Shea

v. Littleton, 414 U.S. 488, 494 (1974).

> The exercise of judicial power under Art. III of the
> Constitution depends on the existence of a case or
> controversy. [A] federal court has neither the power to
> render advisory opinions nor 'to decide questions that
> cannot affect the rights of litigants in the case before
> them.' Its judgments must resolve "a real and substantial
> controversy admitting of specific relief through a decree
> of a conclusive character, as distinguished from an
> opinion advising what the law would be upon a
> hypothetical state of facts."

<u>Preiser v. Newkirk</u>, 422 U.S. 395, 401 (1975).

Three elements must be present for plaintiffs to satisfy the case or controversy requirement of constitutional standing. First, plaintiffs must demonstrate actual injury. <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975). Second, plaintiffs must establish a casual link between the injury and the challenged conduct. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. <u>Id</u>.

In this case, there has been no threatened enforcement of the BAPCPA against plaintiffs. Some courts have concluded that attorneys do not have standing to challenge BAPCPA's constitutionality. <u>See In the Matter of Francis McCartney and Beverly MCCartney</u>, 336 B.R. 588 (2006) (counsel for debtors asked court to determine that attorneys who practice before the court are not debt relief agencies because, among other grounds, the BAPCPA violates the First Amendment); <u>Geisenberger v. Gonzales</u>, 05-5460 (E.Penn. June 19, 2006) (attorney sought declaratory judgment arguing sections 526, 527 and 528 are unconstitutional).

The complaint relates the background to the passage of the BAPCPA and the requirements of the challenged provisions. The complaint notes the possibility of sanctions for violation of the challenged provisions. The complaint further alleges jurisdiction and venue and identifies the parties. While the complaint does

identify two of the plaintiffs as practicing in the area of bankruptcy law[3] it only notes the Act provides certain obligations or prohibitions on them.  The complaint does not allege an injury or threat of enforcement of the challenged provisions subjecting plaintiffs to sanctions.

The complaint hints at threatened injury in the allegation that "The code's requirement that plaintiffs perform any services that plaintiff informed an assisted person that plaintiffs would provide unconstitutionally chills speech by subjecting plaintiffs to sanctions including disgorgement should plaintiffs refuse to provide promised services that later become ill-advised, negligent or unethical."  Complaint (#1) at ¶ 24.  Again, however, there is no allegation of threat of enforcement for taking action that would be in violation of the state rules of professional conduct.  Indeed, the attorney general states that section 526(a)(1) does not require attorneys to perform services that become unnecessary or unethical because to do so would be contrary to the purpose of the statute.  See Memorandum in support of motion (#14) at p. 17 and Reply (#19) at p. 10.  Thus, there is no immediate threat of sanction chilling speech related to this allegation.

There is no allegation of a feared future event and there is no as applied challenge here.  However, plaintiffs have alleged the

---

[3]As noted above, plaintiff Jason McBride does not represent clients in bankruptcy matters.

chilling effect of section 526(A)(1) and a simple amendment could also provide the allegation that the more troubling section 526(a)(4) also chills speech as argued in the briefing.[4]

In New York Bar Association v. Reno, the court found standing on the part of the bar association to seek an injunction preventing the attorney general from enforcing a statute that imposed a criminal penalty for counseling individuals to dispose of assets in order to become eligible for medicaid even though the attorney general stated that the Justice Department was not likely to enforce the statute. New York Bar Association v. Reno, 999 F.Supp. 710 (1998). The court found per se irreparable injury if enforcement of the statute deprived a party of its First Amendment rights. A similar challenge could be made here.

In finding the New York State Bar Association v. Reno decision incorrect, the United States District Court for Rhode Island noted that in order to establish standing to challenge the validity of a statute, the plaintiff must demonstrate a realistic danger of sustaining a direct injury as a result of enforcement and an actual injury can exist where expression is chilled. However, where the Attorney General has expressed an opinion not to enforce a statute and where a plaintiff can not point to a single instance of prosecution under the statute, the self censorship is not

---

[4]Section 526(a)(4) prohibits a debt relief agency from advising an assisted person from incurring debt in contemplation of bankruptcy.

objectively reasonable.  Magee v. United States, 93 F.Supp.2d 161, 163-165.  But the Magee court noted that the attorney general expressed her unequivocal opinion that the statute is unconstitutional, and she had communicated to Congress her intention not to defend or enforce it.  Moreover, she had directed the various U.S. Attorneys under her command not to investigate or prosecute alleged violations.  The same cannot be said in this case.

On July 26, 2006, the Northern District of Texas found that the section 526(a)(4)'s restriction on legal advice violated the First Amendment, Although the court dismissed the case for failure to actually allege the section 526 challenge in the complaint itself- it did so with leave to amend and addressed the constitutionality of that section.  Hersch v United States, 05-2330 (N.Tex. July 26, 2006).  The Hersch court found standing demonstrated by the chilling effect of the statute which caused immediate harm.

To the extent that plaintiffs present a facial challenge, "a facial attack, since it requires unconstitutionality in all circumstances, necessarily presumes that the litigant presently before the court would be able to sustain an as applied challenge." City of Chicago v. Morales, 527 U.S. 41, 78 n.1 (1999); see also United States v. Salerno, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult

challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."), Erwin Chemerinsky, CONSTITUTIONAL ISSUES POSED in the BANKRUPTCY ABUSE PREVENTION and CONSUMER PROTECTION ACT of 2005, 79 Am. Bankr. L.J. 571, 579 (2005) (explaining a facial challenge to invalidate 11 U.S.C. § 526(a)(4) would likely not meet with success). Additionally, the Supreme Court has expressed a strong preference for as-applied, rather than facial, challenges because "[f]acial invalidation 'is manifestly, strong medicine' that 'has been employed by the Court sparingly and only as a last resort.'" Nat'l Endow. for the Arts v. Finley, 524 U.S. 569, 580 (1998) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973)).

For the most part, plaintiffs seek an advisory opinion as to what they can and cannot do under the BAPCPA. The concerns plaintiffs present with respect to BAPCPA are legitimate and will have to be addressed at some point, but that time will only be appropriate with a fully-realized as-applied challenge. Given that there has been no instance of enforcement of the challenged provisions against an attorney, most of the challenges raised by plaintiffs are not ripe. Accordingly, with the exception of the asserted chilling effect of the challenged sections, the complaint is dismissed for lack of standing under Fed. R. Civ. P. 12(b)(1).

B.   Section 526(a)(4)

Order -13-

Plaintiffs challenge section 526(a)(4) of the BAPCPA alleging the prohibition on advising clients to incur debt in contemplation of bankruptcy, if the client is an "assisted person," violates the First Amendment.  The <u>Hersch</u> court found that, regardless of whether strict scrutiny was applied or the <u>Gentile</u> Standard[5] (advocated by the government here):

> section 526(a)(4) prevents lawyers from advising clients to take actions that are lawful, even under BAPCPA.
>
> Moreover, taking on additional debt "in contemplation" of bankruptcy does not necessarily constitute abuse.  [I]t seems quite possible that sometimes taking on more debt could be the most financially prudent option for someone considering bankruptcy.  That situation could be the case when: (1) refinancing at a lower rate to reduce payments and forestall or even prevent entering bankruptcy; or (2) taking on secured debt such as a loan on an automobile that would survive bankruptcy and also enable the debtor to continue to get to work and make payments.  Thus, section 526(a)4) prevents lawyers from giving clients their best advice.  [Footnote omitted where court notes that the provision would also deprive the court of good counsel thus prohibiting speech upon which the court must depend for the proper exercise of judicial power citing <u>Legal Services Corp. v. Velasquez</u>, 531 U.S. 533, 545 (2001)]
>
> Section 526(a)(4), therefore, is over inclusive in at least two respects: (1) it prevents lawyers from advising clients to take lawful actions; and (2) it extends beyond abuse to prevent advice to take prudent actions.  Thus,

---

[5]Under <u>Gentile v. State Bar of Nevada</u>, 501 U.S. 1030 (1991) the Court found that a restriction imposed by ethical regulations on lawyers is permissible if (1) the regulation served "the State's legitimate interest in regulating the activity in question" and (2) "impose[d] only narrow and necessary limitations on lawyers' speech." <u>Id</u>. at 1075.  Strict scrutiny requires the regulation of the speech to be narrowly tailored to promote (2) a compelling government interest. <u>United States v. Playboy Entertainment Group, Inc.</u>, 529 U.S. 803, 813 (2000).  Here the challenged provision is not an ethical standard but a content based restriction and thus strict scrutiny applies.  But 526(a)(4) fails even the lower standard because it is not sufficiently narrow.

section 526(a)(4) of the BAPCPA imposes limitations on speech beyond what is "narrow and necessary." <u>Gentile</u>, 501 U.S. at 1075. <u>See also</u> <u>In Re R.M.J.</u>, 455 U.S. 191, 203 (1982) (even under intermediate scrutiny, "[s]tates may not place an absolute prohibition on certain types of potentially misleading information ... if the information also may be presented in a way that is not deceptive."); <u>Conant v. Walters</u>, 309 F.3d 629, 638-39 (9th Cir. 2002) (finding that government could not justify policy that threatened to punish a physician for recommending to a patient the medical use of marijuana on ground that such a recommendation might encourage illegal conduct by the patient). Accordingly, the court finds 11 U.S.C. § 526(a)(4) facially unconstitutional...

This reasoning is persuasive. The regulation is not sufficiently narrow to achieve the legitimate interest of preventing abuse in the bankruptcy system as it also ensnares advice regarding lawful actions in contemplation of bankruptcy that benefit the debtor and creditors. I agree with the <u>Hersch</u> court that section 526(a)(4) is overly restrictive in violation of the First Amendment. Of course the regulation does strike at actual opportunistic abuses, but the <u>Hersch</u> court noted two instances where the provision reaches beyond abuse into legitimate and beneficial actions. Other legitimate reasons for incurring debt may be taking out a loan to obtain the services of bankruptcy attorney, to pay the filing fee in a bankruptcy case or the conversion of a non-exempt asset to an exempt asset which is still allowed under the Bankruptcy code. Other important legitimate incursions of debt could be the refinance of a mortgage that allows a debtor to pay off the mortgage and other debts, such as credit card debt, in a chapter 13 where failure to refinance may only

allow the debtor sufficient funds to pay off one or the other but not both.   Moreover, the definition of "debt relief agency" excludes non-profits from the regulation and thus debtors in bankruptcy can still get advice that suggests the abuses the regulation was designed to prevent.   So the regulation is both under-inclusive and over-inclusive in violation of even the Gentile standard.

C.   Section 526(a)(1)

Plaintiffs allege that section 526(a)(1) unconstitutionally chills speech by subjecting them to sanctions for failing to perform services which later become ill-advised or unethical.   The provision requires a debt relief agency to perform services that the agency informed an assisted person it would provide in connection with a bankruptcy proceeding.   However, courts should interpret this section to not require attorneys to perform ill-advised or unethical services.   An as-applied challenge fails where the statute can be interpreted in way that does not violate the constitution.   Indeed, among the statute's purposes are limiting unethical conduct and increasing responsibility and integrity.   See Clark v Martinez, 543 U.S. 371, 385 (2005) (interpretation of statues is based on purpose).   Moreover, speech is not chilled by the provision.   At most, it would require attorneys to couch their promises in conditional language and not to abstain from speech as

plaintiffs contend.   The challenge to this section is dismissed.


D.   Section 527

_____ Plaintiffs allege that section 527's required statements such as an assisted person has a right to hire a bankruptcy petition preparer who is not an attorney, unconstitutionally compels speech.[6]

The Hersch court provides persuasive reasoning as to why this section passes constitutional muster:

> The Supreme Court has previously addressed statutes that require a member of a profession to provide customers with factual information regarding provided services. See, e.g., Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781 (1988) (licensed fundraisers); Planned Parenthood of Southeast Penn. v. Casey, 505 U.S. 833 (1992) (doctors providing abortions). Clearly, section 527 implicates the professional's First Amendment rights not to speak. See Wooley v. Maynard, 430 U.S. 705 (1977) (First Amendment rights "include[] both the right to speak freely and the right to refrain from speaking at all."); Riley, 487 U.S. at 797-98 ("[C]ases cannot be distinguished simply because they involved compelled statements of opinion while here we deal with compelled statements of "fact": either form of compulsion burdens protected speech.") Yet, as members of a licensed profession, attorneys and other professionals are subject to regulation of their professional activities by the state, which may extend to speech. See Riley, 487 U.S. at 799; In re Sawyer, 360 U.S. 622, 646-47 (1959) (Stewart, J., concurring); Innovative Database Sys. v. Morales, 990 F.2d 217, 221 (5th Cir. 1993).

---

[6]Plaintiffs have abandoned claims regarding information required by bankruptcy information sheets and do not discuss the allegations involving required information on how to file for bankruptcy and the different chapters.

In <u>Riley</u>, the Supreme Court applied strict scrutiny to invalidate a North Carolina law requiring that "professional fund-raises disclose to potential donors, before an appeal for funds, the percentage of charitable contributions collected during the previous 12 months that were actually turned over to charity." <u>Riley</u>, 487 U.S. at 795-96. The Court found that "the compelled disclosure will almost certainly hamper the legitimate efforts of professional fund-raisers to raise money for the charities they represent," that the "provision necessarily discriminates against small or unpopular charities," and that "more benign and narrowly tailored options are available." <u>Id</u>. at 799-800. The Court concluded that the means chosen to achieve the state's interest in full disclosure were "unduly burdensome and not narrowly tailored." <u>Id</u>. at 798; <u>see also Tex. State Troopers Ass'n, Inc. v. Morales</u>, 10 F. Supp. 2d 628, 633-34 (N. D. Tex. 1998) (relying on Riley to find "the Court must hold unconstitutional a mandatory disclosure provision directed towards solicitation where more benign and narrowly tailored options are available.")

In <u>Casey</u>, a more closely analogous circumstance, a plurality of the Court upheld a Pennsylvania provision requiring doctors to provide a woman seeking an abortion with "truthful, nonmisleading information" about the procedure, health risks, conditions surrounding her pregnancy, and the availability of state provided information. <u>Casey</u>, 505 U.S. at 881-82. In upholding the provision, the Court recognized a substantial government interest in providing a women with the risks of the procedure and a legitimate interest in ensuring a "mature and informed" decision. <u>Id</u>. at 882-83. Further, requiring the doctors to provide information presented no "substantial obstacle" and was not an "undue burden." <u>Id</u>. at 883.

In the case at hand, section 527 advances a sufficiently compelling government interest and does not unduly burden either the attorney-client relationship or the ability of a client to seek bankruptcy. The government clearly has a legitimate interest in attempting to ensure that a client is informed of certain basic information before he or she commences a case in bankruptcy. The amount of debt discharged by bankruptcy in a given year can be tens of billions of dollars, H.R. REP. 109-31, reprinted in 2005 U.S.C.C.A.N. 88, 91, and as among consumer creditors, attorneys, and their debtor

clients, the consumer debtor is often at an informational disadvantage. Thus, the government interest is significant.

Given that significant interest, the compelled speech of section 527 is a reasonable burden.... [I]n an area of law as intricate as bankruptcy, a generalized statement may often require further explanation by a client's attorney. [footnote omitted]. Nothing in section 527 prevents this. Further, the section itself provides that the statement may be altered, so long as the content is "substantially similar," and that the statements need only be provided "to the extent applicable." 11 U.S.C. § 527(b). This leaves the bankruptcy attorney with sufficient control of the distribution of the messages of the statement to avoid any undue burden. See <u>Fargo Women's Health Org. v. Schafer</u>, 18 F.3d 526, 532-34 (8th Cir. 1994) (upholding provision requiring doctors to provide information and where physicians may comment on or dissociate themselves from the materials.) Finally, unlike in <u>Riley</u>, the provision neither acts as a barrier inhibiting the ability of a potential client to seek relief nor disproportionately impacts the ability of certain attorneys to serve their clients. The factual, viewpoint-neutral statement provides a sufficiently benign and narrow means of ensuring that clients are aware of certain general information regarding bankruptcy.

<u>Hersch</u>, at pp. 10-13.

Plaintiffs contend that the required statement about cheaper non-attorney assistance is ill-advised and also amounts to required disclosure of an opponent's viewpoint.  As noted by the <u>Hersch</u> court, nothing in the section 527 prevents attorneys from providing additional information such as why a licensed attorney is beneficial.  The required statement does not amount to disclosure of an opposing viewpoint.  It only requires notice that assistance of another entity is available.  The Court in <u>Casey</u> upheld a statute that required doctors to inform women contemplating

abortion about the assistance  available should she decide to carry
pregnancy to full-term.  505 U.S. at 883.  The required statement
challenged here does not require disclosure of a certain viewpoint
it only requires notice of another option as in <u>Casey</u>.


E.   Section 528

     Plaintiff   McBride   challenges   sections   528's   required
advertising  disclosures  as  unconstitutionally  compelling  untrue,
ill-advised and misleading speech.  McBride specifically challenges
the  requirement  to  clearly  and  conspicuously   use  the  statement
"'We are a debt relief agency.  We help people file for bankruptcy
relief  under  the  Bankruptcy  Code.'  or  a  substantially  similar
statement"  in  advertising.   McBride  states  he  advises  clients  to
file  bankruptcy  and  advises  client  about  dischargeability  of
spousal  and  child  support.   However,  McBride  does  not  represent
clients  in  bankruptcy  matters  and  does  not  file  petitions  for
relief.    Thus   McBride   contends   that   he   is   precluded   from
advertising  or  relaying  any  information  related  to  bankruptcy
unless he makes the untrue required advertising statement.

     The  case  law  is  not  clear  as  to  which  standards  apply  to
compelled commercial speech.  But it does not appear that McBride
is  correct  that  he  is  required  to  give  an  untrue  statement  or  not
advertise  his  services  regarding  advising  clients  in  areas  of
bankruptcy.  The challenged required statement is "We help people

file for bankruptcy relief under the Bankruptcy Code." But section
528 also permit a substantially similar statement which the court
can interpret to mean "we advise people about filing for bankruptcy
assistance under the code." Moreover, McBride could add details to
his advertisements such as he does not actually file petitions.

Moreover, section 528 does not appear to violate the
constitution in a facial challenge. In <u>In re R.M.J.</u>, 455 U.S. 191
(1982), the Court announced that the <u>Central Hudson Gas & Electric
Corporation v. Public Service Commission of New York</u>, 447 U.S. 557
(1980) four-prong intermediate scrutiny commercial speech test
would apply to professional service advertising cases. The first
prong requires the court to determine whether the expression is
protected by the First Amendment right to commercial speech. This
requires the expression at issue to propose a commercial
transaction that is not unlawful or misleading. <u>Central Hudson</u> at
566. The second prong requires a court to ask whether the
government has a substantial interest. <u>Id</u>.[7] If both inquiries are
positive, then the third and fourth prongs look to whether the
regulation directly advances the governmental interest asserted and
whether the regulation is narrowly drawn. <u>Id</u>. <u>In Board of Trustees
of State University of New York v. Fox</u>, 492 U.S. 469, 477 (1989),
the Court noted that a narrowly drawn regulation does not have to
be the least restrictive means, but rather be "something short of

_____

[7]Such as preserving the reputation of the legal profession.

a least-restrictive-means standard."

However, In <u>Zauderer v. Office of Disciplinary Counsel</u>, 471 U.S. 626 (1985) the Court addressed the validity of a state statute that compelled the disclosure of possible litigation costs in attorney advertisements. The Court recognized that disclosure requirements implicated the attorney's First Amendment right, but refused to hold the requirement unconstitutional. Instead, the Court applied the rational basis test and held that an "advertiser's rights [were] adequately protected as long as disclosure requirements [were] reasonably related to the [s]tate's interest in preventing deception of consumers." <u>Id</u>. at 651. This standard will not inhibit the government's ability to regulate deceptive advertising since it would allow the government to pass legislation to address problems one piece at a time. <u>Id</u>. at 651, n.14.

But, in <u>Riley v. National Federation of the Blind</u>, 487 U.S. 781, 796 (1988), the Court applied strict scrutiny and invalidated a regulation requiring disclosure of the amount of contributions that were actually turned over to charity. But the <u>Zauderer</u> decision is more closely matched factually with the present case. And the Court in Riley also stated that the regulation applied to non-commercial speech. Thus, it appears that the rational basis test applies, but even if intermediate scrutiny of <u>Central Hudson</u> applied, the regulation passes constitutional muster

Prior to section 528 of the Code, consumer bankruptcy attorneys advertised themselves truthfully as bankruptcy attorneys. Such advertising was not illegal, false, deceptive, or misleading. With the enactment of section 528, consumer bankruptcy attorneys are compelled to advertise themselves as "debt relief agencies" that "help people file for bankruptcy relief under the Code" which is still not illegal or misleading. Thus, the first prong of Central Hudson is satisfied.

The congressional legislative history indicates that section 528 is intended to "[p]revent deceptive and fraudulent advertising practices by debt relief agencies ...." 151 CONG. REC. H2063-01, 2066 (2005). Preventing fraud is a substantial interest and the second prong is satisfied.

The third prong requires section 528 to directly advance the government's asserted interest of accurate advertising that would not deceive or defraud consumers. It could be argued that compelling consumer bankruptcy attorneys to advertise themselves as "debt relief agencies" fails to promote accurate advertising because the public would be unable to differentiate between an attorney and non-attorney debt relief agency. However, the argument fails because section 528 does not prohibit consumer bankruptcy attorneys from identifying themselves as both bankruptcy attorneys and "debt relief agencies" in advertisements. Thus, the forced inclusion of "debt relief agencies" in advertisements gives

consumers more accurate information to better determine what type of debt relief agency they may require.  McBride's argument regarding non-bankruptcy attorneys also fails because he does not take into account the fact that section 528 allows a statement of a "substantially similar" meaning to be advertised in place of "We help people file for bankruptcy relief under the Code."  The ordinary meaning of "substantially similar" requires any statement to share largely the same characteristic as "We help people file for bankruptcy relief under the Code."  Because this would require a case-by-case determination, a facial challenge is inappropriate.

The fourth prong of <u>Central Hudson</u> requires section 528 to be narrowly drawn.  "Narrowly drawn" requires the government to use a means that is short of the least-restrictive-means standard.  The challenged provisions only requires debt relief agencies to insert a two-line admonition into certain advertisements.  Although there may be better ways to prevent deceptive advertising, section 528 generally applies to most consumer bankruptcy attorneys while, generally not applying to non-consumer bankruptcy attorneys (McBride's claim notwithstanding). Thus, section 528 is narrowly drawn to protect consumer debtors from deceptive advertising and the fourth prong is satisfied.  The motion to dismiss this claim is granted.


F.   Vagueness

Plaintiffs lack standing on this issue because it is simply not concrete at this point.

Plaintiffs allege that sections 526-528 are unconstitutionally vague because they cannot tell who an assisted person is because "non-exempt" property is not identified by the code.  Plaintiffs also argue that the code does not inform plaintiffs how to value assets and that it allows discriminatory and arbitrary treatment.

A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement. Chicago v. Morales, 527 U.S. 41, 56-57, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999).

The term "assisted person" means any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $150,000.  11 U.S.C. § 101(3). Nonexempt property is not defined.  The Supreme Court has provided a definition.  An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.  Owen v. Owen, 500 U.S. 305, 308 (1991).  Section 522 determines what property a debtor may exempt.  11 U.S.C. § 522. There is substantial case law discussing exemptions.  Valuation of exemptions is no different under the BAPCPA than prior to its enactment.  The lack of a definition of nonexempt property does not

render sections 526-28 unconstitutionally vague on its face.

Plaintiffs argue that in some instances a debtor can choose federal or state exemptions and conceivably one set of exemptions could produce more than $150,000 in nonexempt assets and the code does not state which set of exemptions to apply.  However, the code gives debtors a choice, 11 U.S.C. § 522(b), and the court could construe the statute (in an as applied challenge) not to punish an attorney who chooses one over the other.  This is an abstract challenge that is not ripe for review and does not demonstrate facial unconstitutionality.

Plaintiffs next argue that the code does not tell them how to value assets as there are several ways to value an asset like a car for example.  Plaintiffs also take issue with the phrase "reasonably necessary" as used with respect to exemptions such as in 11 U.S.C. § 522(d)(10)(D).  Again, this needs an as applied challenge and, in essence, plaintiffs would require the code to provide precise guidance on every asset imaginable.  Perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.  See Grayned v. City of Rockford, 408 U.S. 104, 110 (1972) ( "Condemned to the use of words, we can never expect mathematical certainty in our language").

Plaintiffs further argue that they are subject to arbitrary and discriminatory enforcement of section 526-28 because the value

of an asset is undefined.  In a facial challenge, plaintiffs fail to show the lack of absolute precision in the definitions encourages arbitrary enforcement.  The motion to dismiss the vagueness claim is granted.


                            CONCLUSION

     For the reasons stated above, defendants' motion to dismiss (#14) is granted in part and denied in part.


     Dated this ____11th____ day of August, 2006.

                              ___s/ Michael R. Hogan_____
                              UNITED STATES DISTRICT JUDGE